UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,

COMMONWEALTH OF MASSACHUSETTS,

and

STATE OF WISCONSIN,

        *Plaintiffs,*

v.

DAIRY FARMERS OF AMERICA, INC.

and

DEAN FOODS COMPANY,

        *Defendants*.

**COMPLAINT**

The United States of America, the Commonwealth of Massachusetts, and the State of Wisconsin ("Plaintiff States"), bring this civil antitrust action to prevent Dairy Farmers of America, Inc. ("DFA") from acquiring certain fluid milk processing plants from Dean Foods Company ("Dean").

**I.    Introduction**

DFA's acquisition of most of Dean's fluid milk processing plants would further consolidate two highly concentrated fluid milk markets: (1) northeastern Illinois and Wisconsin and (2) New England. The acquisition would make DFA the largest player in each market, with nearly 70% market share in northeastern Illinois and Wisconsin and over 50% in New England.

1

DFA is the largest dairy cooperative in the United States, with nearly 14,000 farmer-members located in dozens of states. DFA also owns numerous fluid milk processing plants, including plants in Cedarburg, Wisconsin; New Britain, Connecticut; and Portland, Maine. Dean, the largest fluid milk processor in the nation, owns competing plants in Harvard, Illinois; De Pere, Wisconsin; and Franklin, Massachusetts.

DFA and Dean compete head-to-head to sell fluid milk to customers in the geographic areas served by these plants, including supermarkets, schools, convenience stores, and hospitals, among others. In these areas, DFA and Dean are two of only three significant competitive options for these customers. Competition between DFA and Dean has benefitted these customers by lowering fluid milk prices and improving service. The acquisition would eliminate competition between DFA and Dean in these geographic areas, threatening to increase prices for supermarkets, schools, and other fluid milk customers—price increases that would ultimately be passed on to millions of individual consumers.

For these reasons and those set forth below, DFA's proposed acquisition of assets from Dean threatens to lessen competition substantially in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

## II. Background

### A. Fluid Milk Processing

1. Approximately 10 million dairy cows produce over 200 billion pounds of raw milk in the United States each year. Dairy farmers sell the raw milk that their cows produce to processing plants that convert the raw milk into fluid milk, ice cream, cheese, and other dairy products. Fluid milk is raw milk that has been processed for human consumption. It is the ordinary fresh milk that can be found in supermarket and convenience store refrigerators.

2.      Fluid milk processing plants purchase raw milk from dairy farmers, pasteurize and package the milk, and sell and distribute the processed product. Processors sell fluid milk to supermarkets, schools, convenience stores, hospitals, and others—sometimes through distributors and sometimes directly. The demand for fluid milk in the United States has declined, causing the closure of fluid milk processing plants around the country and, among other factors, leading to the pending bankruptcy of Dean and other fluid milk processors. Despite this reduction in demand, a significant group of consumers remains loyal to traditional fluid milk, and their demand for fluid milk continues to be largely unaffected by changes in price.

3.      Fluid milk customers pay different prices based on a variety of factors, including the number of competitive alternatives available to the customer. Large customers and school districts typically request bids from fluid milk processors. The prices quoted by processors in these bids depend on the number and strength of competing processors, the processor's product, transportation and service costs, the processor's capacity utilization, and the ability of the processor to deliver directly to the customers' locations, among other factors. Distance between processors and purchasers also affects fluid milk pricing because fluid milk has a limited shelf life and is costly to transport. As a result, most customers purchase fluid milk from nearby processing plants.

**B.      The Defendants and the Merger**

4.      Dairy Farmers of America is the largest cooperative of dairy farmers in the country, with nearly 14,000 members. In 2018, DFA marketed 64.5 billion pounds of raw milk—approximately 30% of all raw milk produced in the United States. DFA had 2018 revenues of $13.6 billion.

5.      DFA is also vertically integrated through its ownership interests in milk processing plants. DFA owns a number of dairy processing plants around the country, including

eight fluid milk processing plants and a significant stake in a joint venture that owns twelve additional fluid milk plants. In the northeastern Illinois and Wisconsin area, DFA owns a fluid milk plant in Cedarburg, Wisconsin. In the New England area, DFA owns fluid milk plants in New Britain, Connecticut and Portland, Maine. These plants compete directly against certain processing plants that DFA proposes to acquire from Dean.

6. Dean Foods is the largest fluid milk processor in the country. It currently operates 57 fluid milk processing plants in 29 states. Dean's fluid milk processing network includes plants in the northeastern Illinois and Wisconsin area in Harvard, Illinois and De Pere, Wisconsin, and in the New England area in Franklin, Massachusetts. Dean had 2018 revenues of $7.75 billion.

7. Dean filed for Chapter 11 bankruptcy protection on November 12, 2019. Simultaneous with the bankruptcy filing, Dean announced that it was in discussions to sell some or all of its fluid milk plants to DFA. Dean's financial position continued to worsen in the months after its bankruptcy filing and was exacerbated by the coronavirus pandemic, which caused demand for milk by schools and restaurants to plummet. The growing financial crisis caused the bankruptcy process to be accelerated in order to find buyers for Dean's assets before the company ran out of money to continue operating. By order of the bankruptcy court, Dean accepted bids for its assets and selected winning bidders on March 30, 2020. Dean selected DFA as the winning bidder for the majority of Dean's assets.

8. On April 6, 2020, DFA and Dean entered into an asset purchase agreement whereby DFA agreed to purchase 44 of Dean's 57 fluid milk plants, along with various other assets, for a total value of $433 million. The purchase price consists of $325 million in cash and $108 million in forgiveness of debt owed by Dean to DFA.

**III.     Jurisdiction and Venue**

9.     The United States brings this action under Section 15 of the Clayton Act, 15 U.S.C. § 25, as amended, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.

10.     The Plaintiff States bring this action under Section 16 of the Clayton Act, 15 U.S.C. § 26, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18. The Plaintiff States, by and through their respective Attorneys General, bring this action as *parens patriae* on behalf of and to protect the health and welfare of their citizens and the general economy of each of their states.

11.     DFA and Dean process, market, sell, and distribute fluid milk in the flow of interstate commerce, and their sale of fluid milk substantially affects interstate commerce. This Court therefore has subject matter jurisdiction over this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25, and 28 U.S.C. §§ 1331, 1337(a), and 1345.

12.     DFA and Dean both transact business in this district, including by selling fluid milk to customers in this district. Venue is therefore proper in this district under Section 12 of the Clayton Act, 15 U.S.C. § 22 and under 28 U.S.C. § 1391(c).

**IV.     The Merger Would Substantially Lessen Competition in the Sale of Fluid Milk.**

13.     DFA's acquisition of Dean's plants in northeastern Illinois, Wisconsin, and New England is likely to lessen competition substantially for fluid milk customers. DFA and Dean are two of only three significant fluid milk processors that can serve customers in these areas. If the acquisition were permitted to proceed, DFA would control nearly 70% of the fluid milk market in northeastern Illinois and Wisconsin, and approximately 51% in New England. DFA and Dean compete head-to-head to supply fluid milk customers in these areas today, and those customers

rely on competition between DFA and Dean to get lower prices and better terms. The acquisition would eliminate this competition and lead to higher prices and inferior service for supermarkets, schools, and other fluid milk customers and, ultimately, millions of individual consumers.

### A. The processing and sale of fluid milk is a relevant product market.

14. The processing and sale of fluid milk is a relevant product market and line of commerce under Section 7 of the Clayton Act. Consumers have long-held cultural and taste preferences for fluid milk over other beverages, and fluid milk has particular nutritional benefits and qualities for use in cooking. Consequently, consumer demand for fluid milk is relatively inelastic; that is, fluid milk consumption does not decrease significantly in response to a price increase. Fluid milk is distinct from extended shelf-life milk, ultra-high temperature milk, and aseptic milk, which are produced by different processes, have numerous significant differences, and generally cost significantly more than fluid milk.

15. Retailers, supermarkets, distributors, and other fluid milk customers are unlikely to substitute other products for fluid milk because the individual consumers that they serve continue to demand fluid milk. Schools are similarly unlikely to substitute away from fluid milk in response to even a substantial price increase because they are required by federal regulations to offer fluid milk to students to receive federal reimbursements for meals served to lower-income students.

16. For these reasons, the processing and sale of fluid milk satisfies the well-accepted "hypothetical monopolist" test set forth in the U.S. Department of Justice and Federal Trade Commission *2010 Horizontal Merger Guidelines* ("*Horizontal Merger Guidelines*"). A hypothetical monopolist processing and selling fluid milk likely would impose a small but significant and non-transitory price increase (*e.g.*, five percent) because an insufficient number of customers would switch to alternatives to make that price increase unprofitable.

**B.     The two relevant geographic markets are (1) northeastern Illinois and Wisconsin and (2) New England.**

17.     Fluid milk processors charge different prices to buyers in different areas. They negotiate prices individually, and fluid milk's high transportation costs and limited shelf life mean that customers cannot practically buy fluid milk from each other to avoid a higher price charged by processors. In other words, fluid milk processors can engage in "price discrimination." When price discrimination is possible, relevant geographic markets may be defined by reference to the location of customers. In particular, a relevant geographic market for the processing and sale of fluid milk is a region within which customers can be targeted for a price increase. Most customers purchase fluid milk from suppliers and processing plants located near them because transportation costs and shelf life make sourcing from more distant suppliers prohibitive.

18.     Northeastern Illinois, which includes Chicago and its suburbs, and the state of Wisconsin together comprise a relevant geographic market and section of the country within the meaning of Section 7 of the Clayton Act. Similarly, New England—including the states of Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, and Vermont—is a relevant geographic market and section of the country within the meaning of Section 7 of the Clayton Act. A hypothetical monopolist selling fluid milk in either of these two areas likely would find it profitable to impose a small but significant and non-transitory price increase (*e.g.*, five percent), because customers could not economically switch their source of supply to more distant sources.

**C.     The merger is presumptively unlawful in both geographic markets.**

19.     DFA's acquisition of Dean's fluid milk processing plants would result in a substantial increase in the concentration of processors that compete to supply fluid milk to customers in the northeastern Illinois and Wisconsin geographic market and the New England

geographic market. DFA and Dean are two of only three significant fluid milk processors that sell into each of these geographic markets. In both geographic markets the acquisition would eliminate one competitor, leaving just two remaining competitive options for fluid milk customers, with DFA controlling a significant majority of fluid milk sales. Although there are small or fringe fluid milk processors in each market, these processors are not competitive options for most fluid milk customers because they are much smaller and lack the capabilities necessary to compete against processors like DFA and Dean.

20. The Supreme Court has held that mergers that significantly increase concentration in already concentrated markets are presumptively anticompetitive and therefore presumptively unlawful. To measure market concentration, courts often use the Herfindahl-Hirschman Index ("HHI") as described in the *Horizontal Merger Guidelines*. HHIs range from 0 in markets with no concentration to 10,000 in markets where one firm has a 100% market share. According to the *Horizontal Merger Guidelines*, mergers that increase the HHI by more than 200 and result in an HHI above 2,500 in any market are presumed to be anticompetitive and, therefore, unlawful.

21. The acquisition of Dean's plants by DFA is presumptively unlawful in northeastern Illinois and Wisconsin. For fluid milk customers in this geographic market the combined market share of Dean's processing plants in Harvard, Illinois, and De Pere, Wisconsin, and DFA's processing plant in Cedarburg, Wisconsin is estimated to be approximately 70%. The result is a highly concentrated market with an HHI of nearly 5,200 and an increase in HHI of nearly 1,900.

22. The acquisition is also presumptively unlawful in the New England geographic market. For fluid milk customers in New England, the combined market share of Dean's processing plant in Franklin, Massachusetts, and DFA's processing plants in New Britain,

8

Connecticut, and Portland, Maine is estimated to be approximately 51%. The result is a highly concentrated market with an HHI of approximately 3,300 and an increase in HHI of over 1,000.

    **D.**     **The merger would reduce competition that benefits fluid milk customers in northeastern Illinois and Wisconsin and in New England.**

        *1.*     *The merger would eliminate head-to-head competition between DFA and Dean.*

23.     DFA's acquisition of Dean's plants in northeastern Illinois and Wisconsin and in New England would eliminate head-to-head competition that has benefitted and would otherwise continue to benefit supermarkets, schools, and other fluid milk customers in the relevant geographic markets. Especially for large customers like supermarkets, DFA and Dean are two of only three competitive fluid milk processors, and they are often the two lowest-price options in these geographic markets. For reasons related to service and delivery capabilities, some fluid milk customers consider DFA and Dean to be their only practical options.

24.     Many customers solicit bids from fluid milk processors and select the bidder that offers the lowest price. These customers often leverage a lower-priced bid from one supplier to obtain improved offers and lower prices from other bidders in individual negotiations. Even customers who use less formal procurement processes benefit from the presence of competitive alternatives, which constrain the prices that fluid milk processors can charge. Fluid milk customers in the relevant geographic markets have historically used competing bids from DFA and Dean to obtain lower prices.

25.     As described above, customers typically purchase fluid milk from processing plants located near them because of shelf life and the costs associated with transportation. These costs comprise a significant portion of the prices that fluid milk processors offer to customers. Therefore, the lowest-price fluid milk processors available to customers typically are the processing plants located closest to them. For many fluid milk customers in the relevant

geographic markets, DFA and Dean are two of the closest processing plants and, therefore, two of the most competitive options. The only other significant competitors selling fluid milk to customers in these markets are unlikely to substantially mitigate the loss of competition between DFA and Dean.

26. Many customers also have particular product and service requirements that not all fluid milk processors can meet. Many supermarkets, convenience stores, schools, and other customers require processors to arrange direct-store delivery, or "DSD," where the processor delivers fluid milk to each of the customer's locations on a set schedule—sometimes as often as daily. Schools typically require milk to be packaged in small half-pint containers that require a separate bottling line and dedicated equipment. DFA and Dean, along with the third significant competitor in each of the relevant geographic markets, can satisfy these complex product and service requirements, while other smaller processors cannot.

    *2. The merger would increase the likelihood of anticompetitive coordination.*

27. The acquisition would result in easier and more stable coordinated interaction among DFA and the remaining fluid milk competitors in northeastern Illinois and Wisconsin and in New England. By reducing the number of significant fluid milk processors in these areas from three to two, the acquisition would make it easier for the remaining two processors to coordinate. Coordination is more likely to occur where it would be particularly effective and profitable, as in markets with few significant competitors, relatively homogenous products, and where demand for the product is not significantly affected by an increase in its price. Fluid milk markets exhibit each of these characteristics.

28. There is a history of anticompetitive coordination, including price-fixing, bid-rigging, and customer allocation in fluid milk markets in the United States and, in particular, in the sale of milk to schools. Numerous fluid milk processors, including Dean itself, have engaged

in criminal collusive activities at various times over the last 40 years. Given this history of coordination among fluid milk processors and the reduction in the number of significant competitors, DFA's acquisition of Dean's assets makes coordination more likely to occur in these geographic markets.

### E. Entry by other fluid milk processors is unlikely to prevent an anticompetitive price increase.

29. Entry by fluid milk processors outside the relevant geographic markets is unlikely to be sufficient or timely enough to offset the anticompetitive effects of the acquisition. Processors who do not currently serve these markets are unlikely to begin shipping a significant quantity of fluid milk into the relevant geographic markets due to the same factors that make them uncompetitive in these markets today, including transportation costs and the lack of necessary capabilities or levels of service. Any milk that could be shipped into the relevant geographic markets likely could not be competitively priced because of high transportation costs, nor could it be economically delivered to customers like schools without local distribution networks.

30. The construction of a new fluid milk processing plant to serve customers in either of the relevant geographic markets is very unlikely because of the high costs of building a dairy processing plant—especially as fluid milk consumption has declined. Numerous fluid milk processing plants have closed in the last ten years across the United States, while only a few new plants have been built, largely for retailers to supply their own stores. The two largest fluid milk processors in the country, Dean and Borden, have filed for bankruptcy.

**V.     Countervailing Factors Do Not Offset the Anticompetitive Effects of the Merger.**

31.     The proposed merger is unlikely to generate verifiable, merger-specific efficiencies sufficient to outweigh the anticompetitive effects that are likely to occur in the provision of fluid milk in the relevant geographic markets.

**VI.    Violations Alleged**

32.     The acquisition by DFA of certain Dean assets likely would lessen competition substantially for the processing and sale of fluid milk in the two relevant geographic markets alleged above in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

33.     Unless enjoined, the acquisition likely would have the following anticompetitive effects, among others, in the relevant geographic markets:

(a) competition for the sale and processing of fluid milk between DFA and Dean would be eliminated;

(b) prices for fluid milk would increase; and

(c) quality and service levels would decrease.

**VII.   Request for Relief**

34.     Plaintiffs request that the Court:

(a) adjudge and decree that DFA's proposed acquisition of assets from Dean would be unlawful and violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

(b) preliminary and permanently enjoin and restrain Defendants and all persons acting on their behalf from consummating the planned acquisition or from entering into or carrying out any other contract, agreement, plan, or understanding, the effect of which would be to combine DFA and Dean in the relevant geographic markets alleged above;

(c) award Plaintiffs the costs of this action; and

(d) award Plaintiffs other relief that the Court deems just and proper.

Dated: May 1, 2020

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

_____/s/_____
Makan Delrahim
Assistant Attorney General for Antitrust

_____/s/_____
Bernard A. Nigro, Jr.
Principal Deputy Assistant Attorney General

_____/s/_____
Kathleen S. O'Neill
Senior Director of Investigations and Litigation

_____/s/_____
Eric D. Welsh
Acting Chief
Healthcare and Consumer Products Section

John R. Lausch, Jr.
United States Attorney
Northern District of Illinois

Thomas P. Walsh
Chief, Civil Division
United States Attorney's Office
Northern District of Illinois
219 South Dearborn Street
Chicago, IL 60604
Tel.: 312-353-5312
Email: thomas.walsh2@usdoj.gov

_____/s/_____
Karl D. Knutsen
Justin T. Heipp
Nathaniel J. Harris
Joseph Chandra Mazumdar
Christopher A. Wetzel

Attorneys for the United States
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 4100
Washington, DC 20530
Tel.: 202-514-0976
Fax: 202-307-5802
E-mail: karl.knutsen@usdoj.gov

**FOR PLAINTIFF COMMONWEALTH OF MASSACHUSETTS:**

MAURA HEALY
ATTORNEY GENERAL


BY:   */s/ Daniel H. Leff*
Daniel H. Leff
Assistant Attorney General
Michael MacKenzie
Assistant Attorney General
Deputy Chief, Antitrust Division
One Ashburton Place, 18th Floor
Boston, MA 02108
Tel: (617) 962-2613
Fax: (617) 722-0184
Daniel.Leff@mass.gov
Michael.Mackenzie@mass.gov

FOR PLAINTIFF STATE OF WISCONSIN

JOSHUA L. KAUL
Attorney General of Wisconsin

_____
Gwendolyn J. Cooley
Assistant Attorney General
P.O. Box 7857
Madison, WI 53707-7857
(608) 261-5810
(608) 266-2250 fax
gwendolyn.cooley@wisconsin.gov