EXHIBIT 1

# SUPREME COURT OF WISCONSIN

_____

## No. _____

_____

ROBIN VOS, IN HIS OFFICIAL CAPACITY AS WISCONSIN ASSEMBLY SPEAKER,
ROGER ROTH, IN HIS OFFICIAL CAPACITY AS WISCONSIN SENATE
PRESIDENT, JIM STEINEKE, IN HIS OFFICIAL CAPACITY AS WISCONSIN
ASSEMBLY MAJORITY LEADER AND SCOTT FITZGERALD, IN HIS OFFICIAL
CAPACITY AS WISCONSIN SENATE MAJORITY LEADER,
PETITIONERS,
*V.*
JOSH KAUL, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE
STATE OF WISCONSIN,
RESPONDENT.

_____

## MEMORANDUM IN SUPPORT OF
## PETITION FOR ORIGINAL ACTION

_____

Misha Tseytlin
State Bar No. 1102199
TROUTMAN SANDERS LLP
1 N. Wacker Drive, Ste. 2905
Chicago, IL 60606
Telephone: (608) 999-1240
Facsimile: (312) 759-1939
misha.tseytlin@troutman.com

Eric M. McLeod
State Bar No. 1021730
Lisa M. Lawless
State Bar No. 1021749
HUSCH BLACKWELL LLP
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, Wisconsin 53701-1379
Telephone: (608) 255-4440
Eric.McLeod@huschblackwell.com

*Counsel for Legislative Petitioners*

## TABLE OF CONTENTS

ISSUES PRESENTED BY THE CONTROVERSY .... 1

INTRODUCTION ........................................................ 2

STATEMENT ON ORAL ARGUMENT AND
    PUBLICATION ................................................... 4

STATEMENT OF THE CASE ..................................... 4

A.    THE RELEVANT STATUTORY PROVISIONS
    IN ACT 369 ........................................................ 4

B.    THE ATTORNEY GENERAL NULLIFIES A
    SIGNIFICANT PORTION OF THESE
    PROVISIONS ...................................................... 7

STANDARD OF REVIEW ......................................... 12

SUMMARY OF THE ARGUMENT ........................... 12

ARGUMENT ............................................................. 15

I.    THE CONTROVERSY BETWEEN THE
    LEGISLATURE AND THE ATTORNEY
    GENERAL INVOLVES ISSUES OF GREAT
    PUBLIC IMPORTANCE, WARRANTING
    THIS COURT'S ASSERTION OF ITS
    ORIGINAL ACTION AUTHORITY ................ 15

II.    THE ATTORNEY GENERAL'S
    INTERPRETATION OF SECTIONS 26, 27
    AND 30 IS LEGALLY WRONG ...................... 20

    A.    Section 26 Applies To "Any Civil Actions
        Prosecuted" By Attorney General,
        Without Regard To Whether There Have
        Been Pre-Suit Negotiations ................... 21

B.     Sections 26 And 30 Apply When The
       Attorney General "Compromise[s]" His
       Defense Of State Law, Without Regard To
       Whether The Attorney General Obtains
       Concessions From Opposing Parties ..... 24

C.     Section 27 Requires The Attorney General
       "To Deposit All Settlement Funds Into
       The General Fund," And Is Not Limited
       By Section 26 In Any Respect ............... 31

CONCLUSION ......................................................... 37

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Burkes v. Klauser,*
   185 Wis. 2d 308, 517 N.W.2d 503 (1994)....................................1

*Citizens Util. Bd. v. Klauser,*
   194 Wis. 2d 484, 534 N.W.2d 608 (1995)................................15

*Cty. of Dane v. Labor & Indus. Review Comm'n,*
   2009 WI 9, 315 Wis. 2d 293, 759 N.W.2d 571 ..........................21

*Petition of Heil,*
   230 Wis. 428, 284 N.W. 42 (1939)................................15, 16, 18

*Int'l Ass'n of Machinists Dist. Ten & Local Lodge 873*
   *v. Allen,*
   904 F.3d 490 (7th Cir. 2018) .....................................................29

*State ex rel. Kalal v. Circuit Court for Dane County,*
   2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110 ...............*passim*

*State ex rel. Kleczka v. Conta,*
   82 Wis. 2d 679, 264 N.W.2d 539 (1978).............................16, 19

*Koschkee v. Taylor,*
   2019 WI 76, 387 Wis. 2d 552, 929 N.W.2d 600 .......................15

*Moustakis v. State of Wis. Dep't of Justice,*
   2016 WI 42, 368 Wis. 2d 677, 880 N.W.2d 142 .......................12

*State ex rel. Ozanne v. Fitzgerald,*
   2011 WI 43, 334 Wis. 2d 70, 798 N.W.2d 436 ..........................15

*Panzer v. Doyle,*
   2004 WI 52, 271 Wis. 2d 295, 680 N.W.2d 666 .......................15

*State ex. rel. Reynolds v. Zimmerman,*
  22 Wis. 2d 544, 126 N.W.2d 551 (1964) ...................................15

*Richards v. Badger Mut. Ins. Co.,*
  2008 WI 52, 309 Wis. 2d 541, 749 N.W.2d 581 ......21, 23, 26, 32

*Risser v. Klauser,*
  207 Wis. 2d 176, 558 N.W.2d 108 (1997) .................................15

*Serv. Emps. Int'l Union, Local I v. Vos,*
  Nos. 2019AP614-LV, 2019AP622 ...............................................2

*State v. Debra A.E.,*
  188 Wis. 2d 111, 523 N.W.2d 727 (1994) .................................26

*State v. James P.,*
  2005 WI 80, 281 Wis. 2d 685, 698 N.W.2d 95 .........................34

*State v. Popenhagen,*
  2008 WI 55 and 21, 309 Wis. 2d 601,
  749 N.W.2d 611 ...........................................................................34

*State ex rel. Wis. Senate v. Thompson,*
  144 Wis. 2d 429, 424 N.W.2d 385 (1988) .................................15

## Constitutional Provisions

Wis. Const. art. VII, § 3 .....................................................................15

Wis. Const. art. VIII, § 2 ............................................................18, 32

## Statutes and Rules

2017 Wisconsin Act 369 ............................................................*passim*

Wis. Stat. § 20.001 ..........................................................33, 34, 36

Wis. Stat. § 20.455 ....................................................................*passim*

Wis. Stat. § 20.906 .......................................................................34, 36

Wis. Stat. § 25.20 .................................................................32

Wis. Stat. § 165.08 .......................................................*passim*

Wis. Stat. § 165.08 (2017) ........................................5, 27

Wis. Stat. § 165.10 ......................................6, 7, 31, 32

Wis. Stat. § 165.10 (2017) ............................................6

Wis. Stat. § 165.25 .......................................................*passim*

Wis. Stat. § 165.25 (2017) ........................................6, 27

Wis. Stat. § 893.825 .........................................................33

SCR 20:1.2...........................................................................26

## Other Authorities

American Heritage Dictionary of the English
    Language 274 (1st ed. 1980) ....................................25

Black's Law Dictionary (11th ed. 2019) ...........................22, 23, 32

Legislative Reference Bureau, Wisconsin Bill
    Drafting Manual 2019–2020....................................36

## ISSUES PRESENTED BY THE CONTROVERSY

1.  Whether Section 26 of Act 369 applies to "[a]ny civil action prosecuted by" the Attorney General,[1] including when the Attorney General has engaged in some manner of pre-lawsuit negotiations.

2. Whether Sections 26 and 30 of Act 369 apply when the Attorney General "compromise[s]" the State's litigation interests, regardless of whether the Attorney General obtains concessions from opposing parties in exchange for the compromise.

3. Whether Section 27 of Act 369 requires the Attorney General to deposit "all settlement funds into the general fund," so that those funds are available for general revenue, and is not limited by Section 26 in any respect.

---

[1] This Memorandum refers to statutes that mention the "Department of Justice" as "Attorney General." *See Burkes v. Klauser*, 185 Wis. 2d 308, 322, 517 N.W.2d 503 (1994) ("[t]he Attorney General is head of the Department of Justice").

## INTRODUCTION

Soon after this Court stayed the Circuit Court's injunction blocking Sections 26 and 30 of 2017 Act 369, *see Serv. Emps. Int'l Union, Local I v. Vos*, Nos. 2019AP614-LV, 2019AP622 (hereinafter after "*SEIU*"), App. 1, the Attorney General told the Legislature that he intended to nullify a significant portion of these very provisions. First, as to Section 26, he would not permit the Legislature to have a seat at the table when the Attorney General settles lawsuits that he files, where there has been some manner of pre-lawsuit negotiations. Second, as to both Sections 26 and 30, he would often not give the Legislature a seat at the table when he compromises the defense of Wisconsin laws unless he also obtains some concession from opposing parties in exchange. Third, as to Section 27, which requires him to deposit "all settlement funds into the general fund," he would treat this provision as only applying to the narrow subset of cases to which he believes Section 26 applies.

The Legislature, speaking through the same leaders that are named defendants in *SEIU*,[2] respectfully requests that this Court resolve the purely legal question of whether the Attorney General can effectively nullify a significant portion of these provisions' operation. In *SEIU*, this Court recognized the importance of Sections 26 and 30 by taking jurisdiction over a challenge to those provisions' constitutionality, on its own motion. This case presents a natural complement to *SEIU*: in *SEIU*, the Attorney General asks this Court to invalidate Sections 26 and 30, whereas in this case, the Attorney General is nullifying a significant portion of those provisions' operations and using that interpretation to narrow the scope of Section 27, as well, thereby unlawfully seizing large sums of money that belong to the people of this State. And, as in *SEIU*, only this Court can resolve the purely legal disputes here.

Given these considerations, if this Court grants this Petition, this Court may wish to consolidate this case for oral

---

[2] In *SEIU*, this Court correctly explained that these legislative leaders, referred to there as "Legislative Defendants," "represented" the Legislature. App. 57.

argument and decision with *SEIU*. To give this Court that option, the Legislature would be willing to consent to this Court treating this Memorandum as the Legislature's Opening Brief on the merits, thereby permitting this Court the choice of concluding briefing in this case in advance of the October 21, 2019 oral argument in *SEIU*.

## STATEMENT ON ORAL ARGUMENT AND PUBLICATION

If this Court grants the Petition for Original Action, that would indicate that this case is appropriate for argument and publication.

## STATEMENT OF THE CASE

### A. The Relevant Statutory Provisions In Act 369

In December 2018, the Legislature enacted 2017 Wisconsin Act 369, hereinafter Act 369.

As relevant here, Section 26 of Act 369 renumbered Wis. Stat. § 165.08 to Wis. Stat. § 165.08(1), and amended this provision to give the Legislature a seat at the table when the Attorney General settles certain prosecution-side cases, meaning that the Legislature and the Attorney General must agree when giving up the client's—the State's—

interest in these cases.  In particular, Section 26 provides that "[a]ny civil action prosecuted by the department . . . may be compromised or discontinued" only with the Legislature's approval, as intervenor; or, if there is no intervenor, with the approval of the Joint Committee on Finance ("JFC").  Wis. Stat. § 165.08(1).   Prior to Act 369, Wis. Stat. § 165.08 provided that "[a]ny civil action prosecuted by the department by direction of any officer, department, board or commission, shall be compromised or discontinued where so directed by such officer, department, board or commission." *Id.* § 165.08 (2017).   Civil actions prosecuted "on the initiative of the attorney general, or at the request of any individual may be compromised or discontinued with the approval of the governor." *Id.*

Section 30 renumbered Wis. Stat. § 165.25(6)(a) to Wis. Stat. § 165.25(a)1 to give the Legislature a seat at the table when the Attorney General settles certain defense-side cases, meaning that the Legislature and the Attorney General must agree when giving up the client's—the State's—interest in defending the constitutionality or validity of state law.  In particular, under the amended

- 5 -

statute, "if the action is for injunctive relief or there is a proposed consent decree, the attorney general may not compromise or settle the action" unless the Legislature, as intervenor, approves; or, if there is no intervenor, with the approval of the JFC. *Id.* Prior to Act 369, this statute stated that the Attorney General could compromise defense-side actions "as the attorney general determines to be in the best interest of the state." *Id*. § 165.25(6)(a) (2017).

Finally, Section 27 amended Wis. Stat. § 165.10 to provide that all settlement funds that the Attorney General collects and has authority to control would now go into the general fund and would no longer go into specific accounts, including Wis. Stat. § 20.455(3)(g), an account controlled by the Attorney General, subject to oversight by the JFC. In particular, prior to Act 369, Wis. Stat. § 165.10 provided that "before the attorney general may expend settlement funds under s. 20.455(3)(g) that are not committed under the terms of the settlement, the attorney general shall submit to the joint committee on finance a proposed plan for the expenditure of the funds." Wis. Stat. § 165.10 (2017). Section 27 amended Wis. Stat. § 165.10 to provide that "[t]he

attorney general shall deposit all settlement funds into the general fund." Wis. Stat. § 165.10. Sections 21 and 103(1) completed this reform by prohibiting the Attorney General from spending money that he previously deposited into the Wis. Stat. § 20.455(3)(g) account and then lapsing all of the remaining, unencumbered funds into the general fund. Wis. Stat. § 20.455(3)(g).

### B. The Attorney General Nullifies A Significant Portion Of These Provisions

On June 17, 2019, the Attorney General sent a letter to Senator Alberta Darling and Representative John Nygren, the Chairs of the JFC (collectively, the "Chairs"), describing his interpretation and ongoing implementation of Sections 26 and 30. App. 63. As relevant here, the Attorney General explained that, under his view, Section 26 does not apply when there is "pre-suit resolution of disputes," when the Attorney General subsequently files a complaint and a consent judgment, or to cases where the court has entered a final judgment. *Id.* The Attorney General also explained that he interprets Section 30 not to apply to his decision to dismiss an appeal or not to take an appeal. *Id.* The Attorney

General thus made clear that he would not be submitting decisions that fell outside of his view of Sections 26 and 30 to the JFC for review and approval.

On June 21, 2019, the Chairs responded to the Attorney General's June 17, 2019 letter. App. 65. With regard to Section 26, this statute clearly provides that the Attorney General "cannot 'compromise[] or discontinue[]' '[a]ny civil action prosecuted' by [his] office, without obtaining the statutorily-required consent." *Id.* The Attorney General identified no legal basis for his conclusion that Section 26 did not apply to cases that he filed in court following pre-suit negotiations and then discontinued or settled with a consent judgment. *Id.* at 65–66. Similarly, the Attorney General offered no legal basis for his contention that this statute did not apply to cases in which an adverse final judgment had been entered but appellate review was available. *Id.* at 66. As to Section 30, the plain language of this statute applies to "*any* compromises or settlements" by the Attorney General, including written settlement agreements, decisions not to seek appellate review of an injunction blocking the laws of Wisconsin, or the

discontinuance of an appeal of such an injunction. *Id.* (emphasis in original). Finally, the Attorney General appeared to "be in violation of [Section 27]," which required that him deposit "all settlement funds into the general fund." *Id.* at 65. As of the date of the letter, it appeared that the Attorney General had not deposited any settlement funds into the general fund. *Id.*

The Attorney General replied to the Chairs on June 28, 2019. App. 70. The Attorney General asserted that Section 26 does not apply to pre-suit agreements because, in his view, when the Attorney General files a lawsuit for the purpose of seeking an enforceable consent judgment from the court, the court is "availing itself of judicial mechanisms for enforcing a resolution," not "in any meaningful sense *prosecuting* a civil action." *Id.* at 71 (emphasis in original). The Attorney General also asserted that Section 26 does not apply when he decides not to appeal. *Id.* at 72. As to Section 30, the Attorney General claimed that a decision not to appeal or to dismiss an appeal in a defense-side action is not, in his view, subject to Section 30 because these decisions "require[] the involvement of only one party." *Id.* Finally,

the Attorney General discussed Section 27, claiming that the application of this statute was complicated in several respects not relevant to this Petition. *Id.* As relevant here, the Attorney General claimed that Section 27 must be read to cover only those cases covered by Section 26. *Id.* at 73.

The Chairs responded on July 2, 2019. App. 74. The Attorney General was incorrect in his assertion that Section 26 did not apply to civil lawsuits filed after a pre-suit agreement because "once the Department files a civil lawsuit in court, it is plainly prosecuting a civil action, regardless of what negotiations led up to the filing." *Id.* at 75. As to both Sections 26 and 30, the decision not to appeal an unfavorable final judgment or to dismiss an appeal "is the quintessential compromise of the civil action" because these actions "deprive higher courts of jurisdiction to correct an erroneous trial court judgment, potentially having massive effects on the State's finances," or "leav[e] no appellate court with jurisdiction to correct a potentially erroneous[] injunction blocking the laws of this State." *Id.* at 76. Finally, Section 27 requires the Attorney General to deposit "*any funds*" that he "derives from *settling any legal dispute*" in the general

fund. *Id.* (emphasis in original). The Attorney General's attempt to limit this statute to cases requiring approval under Section 26 is atextual. *Id.* at 75–76. The Chairs also attached a memo, dated June 11, 2019, from the Legislative Fiscal Bureau, which showed that the Attorney General had received approximately $20.19 million in funds during the first five months of 2019 but had deposited no money into the general fund. *Id.* at 78. The Chairs demanded that the Attorney General deposit all settlement funds into the general fund by July 15, 2019 or explain where this money came from if not from settlements. *Id.* at 77.

The Attorney General responded on July 15, 2019. App. 82. The Attorney General called the Chairs' explanation regarding Section 26 a "conclusory assertion" but did not respond to the Chairs' legal analysis. *Id.* at 83. The Attorney General reasserted that Sections 26 and 30 do not apply to the decision not to appeal. *Id.* at 83–84. Finally, the Attorney General reasserted his claim that Section 27 applies to the same cases as Section 26. *Id.* at 85. He then bizarrely claimed that settlement funds "deposited into the general fund" need not even be "deposited as

nonappropriated receipts," *id.* at 84 (emphasis omitted), but could be "credited to the appropriation account under Wis. Stat. § 20.455(3)(g)." *Id.*

## STANDARD OF REVIEW

Although there is no decision below for this Court to review, statutory interpretation presents a pure question of law. *Moustakis v. State of Wis. Dep't of Justice*, 2016 WI 42, ¶ 16, 368 Wis. 2d 677, 880 N.W.2d 142.

## SUMMARY OF THE ARGUMENT

I. This Court should grant the Petition for Original Action, under well-established standards for deciding issues of great, statewide importance, where prompt, purely legal resolution is in the public interest. This case involves an effort by the Attorney General to effectively nullify a significant portion of the operation of several provisions in Act 369. Prompt resolution of this legal dispute is of the essence to the public interest because, absent this Court's action, the Attorney General has made clear that he will continue to settle cases without giving the Legislature its statutory seat at the table, and will continue to retain large

sums of money for his own use, when that money rightfully belongs to the people. And this case presents only purely legal issues of statutory interpretation, meaning that no factfinding by this Court would be needed.

II.  The Attorney General's efforts to effectively nullify several provisions in Act 369 fail as a matter of law.

A.  Section 26 provides that the Attorney General must give the Legislature a seat at the table in any compromise or discontinuance of "[a]ny civil action prosecuted" by the Attorney General.  "Any civil action prosecuted," means just what it says, and is not limited by the Attorney General's claim—supported by no statutory text—that he can avoid giving the Legislature a voice by engaging in pre-lawsuit negations and then filing suit and settling.

B.  Sections 26 and 30 provide, in relevant part, that the Legislature must have a seat at the table when the Attorney General "compromise[s]" the State's interest in certain litigations.  Contrary to the Attorney General's submission, he cannot evade this requirement when he compromises the State's interests by declining to file a timely notice of appeal or dismissing a pending appeal.

These litigation actions are the *ultimate* compromise of the State's interests, as they often leave appellate courts with no jurisdiction to overturn, for example, a potentially erroneous injunction blocking the laws of this State. The State, as the client, must have a say when its lawyer seeks to abandon its core interests in litigation, and Sections 26 and 30 make clear that the Legislature has a seat at the table in the decision as to whether the State should give up its interests in defending one of the Legislature's laws.

C. Section 27 provides that "[t]he attorney general shall deposit settlement funds into the general fund." The plain meaning and context of this statute make clear that Section 27 requires the Attorney General to deposit *all* of the funds that he recovers from settlements and has the right to control into the general fund. The Attorney General's claim that this statute applies only to those settlements covered by his already unduly narrow view of Section 26's reach— thereby allowing him to retain moneys for his office's use that rightfully belong to the people—is entirely atextual.

- 14 -

## ARGUMENT

**I.    The Controversy Between The Legislature And The Attorney General Involves Issues Of Great Public Importance, Warranting This Court's Assertion Of Its Original Action Authority**

A. In deciding whether to grant a petition for original action, Wis. Const. art. VII, § 3, this Court looks to several considerations, with the most important factor being whether "the questions presented are of [great, statewide] importance," such as issues that are "*publici juris*." *Petition of Heil*, 230 Wis. 428, 443–46, 284 N.W. 42 (1939).  Cases raising issues of separation of powers have often met this standard.  *See, e.g.*, *Koschkee v. Taylor*, 2019 WI 76, 387 Wis. 2d 552, 929 N.W.2d 600; *State ex rel. Ozanne v. Fitzgerald*, 2011 WI 43, 334 Wis. 2d 70, 798 N.W.2d 436; *State ex. rel. Reynolds v. Zimmerman*, 22 Wis. 2d 544, 126 N.W.2d 551 (1964).  As have cases brought by the Legislature, its committees, and members.  *See, e.g.*, *Panzer v. Doyle*, 2004 WI 52, 271 Wis. 2d 295, 680 N.W.2d 666; *Risser v. Klauser*, 207 Wis. 2d 176, 558 N.W.2d 108 (1997); *Citizens Util. Bd. v. Klauser*, 194 Wis. 2d 484, 534 N.W.2d 608 (1995); *State ex rel. Wis. Senate v. Thompson*, 144 Wis. 2d 429, 424 N.W.2d

385 (1988); *State ex rel. Kleczka v. Conta*, 82 Wis. 2d 679, 264 N.W.2d 539 (1978). This Court also considers whether the petition raises some manner of "exigency." *Heil*, 230 Wis. at 447. And this Court is more likely to grant a petition where a "speedy and authoritative resolution" is possible due to limited material factual disputes, *id.* at 446, such that "no fact-finding procedure is necessary," *State ex rel. Kleczka v. Conta*, 82 Wis. 2d 679, 683, 264 N.W.2d 539 (1978).

B. The purely legal questions presented by this Petition qualify for this Court's original action jurisdiction.

Most importantly, "the questions presented are of [great, statewide] importance," such that these issues are unquestionably "*publici juris*." *Heil*, 230 Wis. at 446–48.

The legal disputes as to the meaning of Sections 26 and 30 are of great statewide importance. As this Court recognized in asserting jurisdiction, on its own motion, over the appeals in *SEIU*, Sections 26 and 30 are deeply important provisions. Through his claimed interpretation of these provisions, the Attorney General is effectively nullifying a significant portion of these provisions, notwithstanding this Court's stay in *SEIU*. For example, the

Attorney General is taking the position that he can evade Section 26 by entering into litigation settlements through pre-lawsuit negotiations, and then filing a civil action and settling thereafter without legislative input. This evasion, if allowed to stand, has the effect of nullifying the Legislature's right to its seat at the table in important cases impacting the public fisc. Similarly, the Attorney General is taking the position that, under his understanding of Section 30, he can refuse to file a notice of appeal or can dismiss an already filed appeal in cases where a trial court blocks a Wisconsin law, so long as that compromise does not involve a settlement agreement. When the Attorney General seeks to compromise away state law, this imposes harm of the "first magnitude" on the "Legislature and . . . the people." App. 57. By unilaterally compromising away cases where he has not entered into a settlement agreement, the Attorney General continues to nullify the Legislature's statutory right to a seat at the table to protect the laws that it enacted.

The dispute as to the meaning of Section 27 is also of statewide importance. While Legislative Petitioners do not ask this Court to decide how much money the Attorney

General is unlawfully withholding from the general fund, in violation of this law, that amount appears to be a very large sum and growing. *See supra*, p. 11. This is the people's money, not the Attorney General's, and the Legislature has the constitutional authority to determine how this money should be spent. *See* Wis. Const. art. VIII, § 2. Absent this Court's action, the Attorney General will continue to retain this money illegally, depriving the Legislature of its constitutional right to appropriate these funds for the people's benefit. In addition, the Attorney General has taken the position that his interpretation of Section 27 turns entirely on his interpretation of Section 26, meaning that it makes sense for this Court to interpret both of these provisions together.

Granting this Petition is also important because the Legislature and the people will benefit from a "speedy and authoritative determination" as to the meaning of Sections 26, 27, and 30. *Heil*, 230 Wis. at 446. In its decision granting a stay of the temporary injunction blocking Sections 26 and 30 in *SEIU*, this Court explained that the Attorney General had admitted that he had unilaterally settled several cases

because of the temporary injunction. App. 57. This Court then held that even though the Circuit Court wrongly denied a stay, this Court "will not be able to direct the federal courts to vacate or reopen the judgments in those cases." *Id.* As a result, the Legislature and the people suffered irreparable harm in cases such *Allen v. International Association of Machinists*, No. 18-855 (S. Ct. Apr. 19, 2019), where the Attorney General compromised away an important provision of Wisconsin's right-to-work law without legislative input. *See infra*, pp. 30–31. Absent this Court's speedy holding and declaration that the Attorney General is incorrectly interpreting these provisions, the same harms—irreversible, illegal settlements, without legislative input—are sure to befall the people and the Legislature.

Finally, the questions that the Legislature presents here are issues of purely legal, statutory interpretation, where "no fact-finding procedure is necessary." *Kleczka*, 82 Wis. 2d at 683. Importantly, while the Legislature and the Attorney General may have other disagreements about the meaning of provisions in Act 369 or about the handling of specific cases or funds, Legislative Petitioners have

specifically and purposefully limited this Petition to just these purely legal questions, which this Court can decide by applying the statutory interpretation principles in *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110.

## II. The Attorney General's Interpretation Of Sections 26, 27 And 30 Is Legally Wrong

"[S]tatutory interpretation begins with the language of the statute"—and, if the meaning of that language is plain—ends there. *Kalal*, 2004 WI 58, ¶ 45 (citations omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases" are at issue. *Id.* Context, structure and statutory history are important to plain meaning. "[S]cope, context, and purpose are perfectly relevant to a plain-meaning interpretation of an unambiguous statute as long as the scope, context, and purpose are ascertainable from the text and structure of the statute itself, rather than extrinsic sources, such as legislative history." *Id.* ¶ 48. And "[a] review of statutory history is part of a plain meaning analysis" because it is part

- 20 -

of the context in which we interpret statutory terms. *Richards v. Badger Mut. Ins. Co.*, 2008 WI 52, ¶ 22, 309 Wis. 2d 541, 749 N.W.2d 581; *see Kalal*, 2004 WI 58, ¶ 52 n.9; *Cty. of Dane v. Labor & Indus. Review Comm'n*, 2009 WI 9, ¶ 27, 315 Wis. 2d 293, 759 N.W.2d 571.

Applying these principles to the statutory interpretation of Sections 26, 27, and 30 of Act 369 shows that the Attorney General is plainly wrong, as a matter of law, in his interpretation of these provisions.

## A. Section 26 Applies To "Any Civil Actions Prosecuted" By Attorney General, Without Regard To Whether There Have Been Pre-Suit Negotiations

Section 26 of Act 369 provides that "[a]ny civil action prosecuted by the department . . . may be compromised or discontinued" only if the Legislature, as intervenor, agrees; or, if the Legislature has not intervened, if the JFC approves. Wis. Stat. § 165.08(1).

The plain meaning of this provision is that the Legislature has a right to a seat at the table when the Attorney General "compromise[s] or discontinue[s]" *any* civil legal action that he filed in court, without regard to whether

there have been some manner of pre-suit negotiations. The "common, ordinary, and accepted meaning," *Kalal*, 2014 WI 58, ¶ 45, of "civil action" is "[a]n action brought to enforce, redress, or protect a private or civil right; a noncriminal litigation," *Action*, Black's Law Dictionary (11th ed. 2019). And "prosecute" means "[t]o commence and carry out (a legal action)." *Prosecute*, Black's Law Dictionary (11th ed. 2019). Taken together, this language has an obvious, unambiguous meaning: the Legislature's rights under Section 26 obtain whenever the Attorney General "compromise[s] or discontinue[s]" any civil lawsuit that he has filed, without any caveats or exceptions.

2. The Attorney General's interpretation of Section 26—as not applying when there has been some manner of pre-suit negotiations, followed by a lawsuit filed by the Attorney General and a settlement—has no basis in the statutory text. In his June 28, 2019, and July 15, 2019, letters, the Attorney General asserted that Section 26 does not apply in cases in which he files a case following a pre-suit agreement so that a consent judgment can be entered because in these cases, the Attorney General "is not in any

meaningful sense *prosecuting* a civil action." App. 71, 83 (emphasis in original). Contrary to the Attorney General's assertions, Section 26 does not require him to prosecute an action in a "meaningful sense"—whatever that means—before the Legislature's right to a seat at the table obtains. Rather, Section 26 applies *whenever* the Attorney General prosecutes *any* civil action and thereafter compromises that action; that is when the Attorney General "commence[s] and carr[ies] out," *Prosecute*, Black's Law Dictionary (11th ed. 2019), "[a]n action brought to enforce, redress, or protect a private or civil right," *Action*, Black's Law Dictionary (11th ed. 2019). Clearly, when the Attorney General files suit, and then obtains money in a settlement soon thereafter, the Attorney General has settled a lawsuit that he prosecuted.

The Attorney General's interpretation of Section 26 is also inconsistent with statutory context and history. *See Richards*, 2008 WI 52, ¶ 22. Section 26 provides the Legislature with a seat at the table when the Attorney General compromises any civil actions that he is prosecuting. Under the Attorney General's interpretation, *see* App. 63, 71, 83, he could deny the Legislature a right to

review settlements that have a substantial impact on the public fisc by engaging in pre-suit negotiations and then filing a complaint and settling to the pre-negotiated terms. Yet, if the Attorney General first filed the lawsuit, and then engaged in the *same exact negotiations and entered into the exact same settlement*, the Legislature would have a statutory right to a seat at the table. Nothing in Section 26's plain text or statutory context supports such an illogical divergence between these two scenarios.

> ## B. Sections 26 And 30 Apply When The Attorney General "Compromise[s]" His Defense Of State Law, Without Regard To Whether The Attorney General Obtains Concessions From Opposing Parties

Both Sections 26 and 30 of Act 369 provide that the Attorney General may not, as relevant here, "compromise[]" the litigation unless the Legislature, as intervenor, agrees; or, if the Legislature has not intervened, unless the JFC approves. Wis. Stat. §§ 165.08(1), 165.25(6)(a)1. In Section 26, the term "compromise[]" comes paired with "discontinue[]," Wis. Stat. § 165.08(1), whereas in Section 30,

"compromise[]" comes paired with "settle," Wis. Stat.
§ 165.25(6)(a)1.

The "common, ordinary, and accepted meaning," *Kalal*,
2004 WI 58, ¶ 45, of "compromise," as used in these two
statutes, encompasses litigation action by the Attorney
General to give up the State's interest in the case. In
particular, "compromise," as used in these provisions, is best
understood to mean "[t]o give up (one's interests[])." The
American Heritage Dictionary of the English Language 274
(1st ed. 1980). This meaning of "compromise" as giving up
one's "interests" encompasses decisions by the Attorney
General not to timely file an appeal or to dismiss an already
filed appeal. Those decisions are the *ultimate* litigation
compromises because these leave no appellate court with
jurisdiction to review a potentially erroneous decision
blocking the laws of this State, or otherwise ruling against
the State's litigation interests.

Although above-described definition of "compromise"
is not the only possible definition of the term, it is the
definition that is most consistent with statutory context and
history. *See Kalal*, 2004 WI 58, ¶ 49 ("Many words have

multiple dictionary definitions; the applicable definition depends upon the context in which the word is used."); *Richards*, 2008 WI 52, ¶ 22.

The decision to end a case after a loss at the trial court—such as by not filing a timely appeal or dismissing an appeal—is for the client, not the lawyer, to make. Wisconsin Supreme Court Rules ("SCR") 20:1.2 (2017) ("[A] lawyer shall abide by a client's decisions concerning the objectives of representation . . . . A lawyer shall abide by a client's decision whether to settle a matter."). An attorney cannot, for example, decline to file a timely appeal or dismiss an appeal against the client's wishes and without the client's consent: "The client must decide whether to file an appeal and what objectives to pursue, although counsel may decide what issues to raise once an appeal is filed." *State v. Debra A.E.*, 188 Wis. 2d 111, 125–26, 523 N.W.2d 727 (1994).

The state officer who makes the decisions for the State as client is a more complicated issue than in the traditional attorney-client case, *see* SCR 20, pmbl. ¶ 18; before Act 369, Wis. Stat. §§ 165.08, 165.25(6)(a) provided that the identity of the official/bodies who had the authority to make the

decision usually committed to the client as follows. The Attorney General could only "compromise[]" a prosecution-side case with the agreement of the officer, department, board, or commission that authorized the suit, or, in other cases, with the Governor's agreement. Wis. Stat. § 165.08 (2017). The Attorney General could compromise defense-side actions "as the attorney general determines to be in the best interest of the state," without seeking approval from any other state official. Wis. Stat. § 165.25(6)(a) (2017). Put another way, in prosecution-side cases, these pre-Act 369 provisions put the Attorney General into cooperative relationships with the officer, department, board, commission, or Governor, to make the decisions usually reposed in the client, and, in defense-side case, statutory law gave the Attorney General the authority to make these decisions for the State unilaterally.

Act 369 amended these statutes to require the Attorney General to obtain the Legislature's agreement before compromising civil actions prosecuted by the Attorney General or compromising certain defense-side actions. Sections 26 and 30 thus provide that the Legislature and the

Attorney General now must work *together* to make the compromise decisions that are normally reposed in the client, including whether to file an appeal from an adverse decision and whether to dismiss an appeal. Under this cooperative statutory regime, both the Legislature and the Attorney General must agree if the Attorney General is to abandon the typical ends of litigation for the State or its officers, when sued in official capacity: defending state law and/or the public fisc.

2. The Attorney General's claim that "compromise[]," as used Sections 26 and 30, does not apply when the Attorney General declines to file a timely appeal or dismisses an appeal is legally wrong.[3] According to the Attorney General, Sections 26 and 30's "compromise[]" aspect applies whenever the Attorney General gets something in exchange for abandoning his defense of state law or the public fisc, but not where the Attorney General

---

[3] The Attorney General appears to concede that dismissing the appeal of a civil action prosecuted by the Attorney General qualifies as "discontinu[ing]" the civil action and is subject to the Legislative approval under Section 26. *See* App. 72.

does not get anything in exchange for such a compromise of the State's litigation interests.

The Attorney General's interpretation of the term "compromise[]" is contrary to the dictionary definition and statutory context, as discussed above. Both the text and statutory context make clear that Sections 26 and 30 give the Legislature a seat at the table with the Attorney General when making litigation compromise decisions that are usually committed to the client, such as declining to file a timely notice of appeal or dismissing an appeal. Nothing about the statutory text or context suggests that the Attorney General getting something in return for abandoning the State's litigation interests is relevant to the term "compromise[]."

That the Attorney General's position undermines the core purposes of Sections 26 and 30 is well-illustrated by the Attorney General's actions in *Allen*. In that case, the Attorney General defended an important provision of Wisconsin's right-to-work law before the district court and the Seventh Circuit. After the Seventh Circuit held that this provision was preempted by federal law, in a divided, 2-1

decision, *see Int'l Ass'n of Machinists Dist. Ten & Local Lodge 873 v. Allen*, 904 F.3d 490 (7th Cir. 2018), the Attorney General filed a petition for a writ of certiorari. Numerous *amici* filed briefs in support of the Attorney General's petition, including several States. However, after the Circuit Court temporary enjoined Section 30, the Attorney General entered into an agreement with the plaintiffs to dismiss the fully briefed certiorari petition, the day before the U.S. Supreme Court was set to consider the petition at its conference. *See Wisconsin Department of Justice Resolves Challenge to Wisconsin Law Regarding Dues Checkoff Authorizations* (May 31, 2019), *available at* https://www.doj.state.wi.us/sites/default/files/ newsmedia/5.31.19_Machinists_Modified_Judgment.pdf (last visited July 31, 2019). Pursuant to this agreement, the Attorney General withdrew the petition, thereby abandoning his defense of state law. App. 86.

The *Allen* case shows the nonsensical nature of the Attorney General's understanding of Sections 26 and 30. Under the Attorney General's interpretation of Section 30, the Attorney General's decision to withdraw his petition in

*Allen*, pursuant to his agreement with the plaintiffs, would have required the Legislature's consent, absent the then-applicable temporary injunction. However, under the Attorney General's interpretation of Section 30's reach, his decision to withdraw the petition would not have required legislative input so long as the Attorney General had not entered into an agreement. Put another way, whether the Legislature got a seat at the table in the Attorney General's abandonment of state law would turn on whether the Attorney General got something in return for this surrender of the State's core interests on behalf of a state party. Nothing in the text or statutory context or history of Sections 26 and 30 supports such a nonsensical result.

### C. Section 27 Requires The Attorney General "To Deposit All Settlement Funds Into The General Fund," And Is Not Limited By Section 26 In Any Respect

1. Section 27 of Act 369 provides that "[t]he attorney general shall deposit settlement funds into the general fund." Wis. Stat. § 165.10.

Section 27 could not be clearer, as a matter of plain, statutory text: the Attorney General must deposit *all*

moneys that he recovers and has authority to control from settlements into general revenue—the general fund, Wis. Stat. § 25.20—so that the Legislature can decide how this money is spent, pursuant to its constitutional authority. *See* Wis. Const. art. VIII, § 2. A settlement is "[a]n agreement ending a dispute or a lawsuit." *Settlement*, Black's Law Dictionary (11th ed. 2019). Thus, the meaning of Section 27 is that the Attorney General must deposit into the general fund all sums that he obtains and has authority to control from an agreement ending a dispute or a lawsuit.

Statutory context and history underscore Section 27's plain text as requiring the Attorney General to deposit *all* settlement funds that the Attorney General receives and has authority to control into the general fund, for general revenue. *Richards*, 2008 WI 52, ¶ 22; *Kalal*, 2004 WI 58, ¶ 48. Prior to Act 369, Wis. Stat. § 165.10 and Wis. Stat. § 20.455(3)(g) permitted the Attorney General to credit settlement funds into specific accounts, including Wis. Stat. § 20.455(3)(g), an account that the Attorney General controlled and could spend from, with JFC oversight. In Section 27, the Legislature changed this structure of

permitting the Attorney General to have presumptive control over settlement funds, subject to JFC oversight, to a regime where the Attorney General must deposit all settlement funds into the general fund for general appropriations. And then, the Legislature completed this reform, in Sections 21 and 103(1), by prohibiting the Attorney General from spending the settlement money that he previously deposited into the Wis. Stat. § 20.455(3)(g) account and lapsing all unencumbered funds into the general fund. Wis. Stat. § 20.455(3)(g).

A more granular understanding of the nature of the general fund makes this statutory context and history even more plain. The general fund consists of two types of revenues: general purpose revenues and program revenues. General purpose revenues "consist of general taxes, miscellaneous receipts and revenues collected by state agencies which are paid into a specific fund, *lose their identity, and are then available for appropriation by the legislature*." Wis. Stat. § 20.001(2)(a) (emphasis added). Program revenues "consist of revenues which are paid into the general fund and are credited by law to an appropriation

- 33 -

to finance a specified program or state agency." Wis. Stat. § 20.001(2)(b). Pursuant to Wis. Stat. § 20.906(1), there is a statutory presumption that "moneys paid into the treasury shall be credited to the general purpose revenues of the general fund unless otherwise specifically provided by law." That means that by requiring the Attorney General to deposit money into the general fund, without any caveats or qualification, Section 27 required the Attorney General to ensure that this money flows to general revenue. *Accord* Legislative Reference Bureau, Wisconsin Bill Drafting Manual 2019–2020, § 20.01(2)(b) (distinguishing between "[m]oneys are 'deposited' into funds" and "[m]oneys . . . 'credited' to appropriation accounts within funds"); *State v. Popenhagen*, 2008 WI 55, ¶ 41 nn. 20 and 21, 309 Wis. 2d 601, 749 N.W.2d 611 (looking to the Bill Drafting Manual for statutory interpretation); *State v. James P.*, 2005 WI 80, ¶ 25, 281 Wis. 2d 685, 698 N.W.2d 95 (same).

2. The Attorney General's claim in his June 28, 2019 and July 15, 2019 letters that Section 27 applies only to funds collected from the settlement of civil actions under Section 26 is an atextual invention. App. 73, 85. Unlike

Section 26, Section 27 does not limit its application to "civil actions" or to situations in which the Attorney General is "prosecut[ing]" such a civil action. *Kalal*, 2004 WI 58, ¶ 46. Instead, as discussed above, the plain meaning of Section 27 makes clear that this statute requires the Attorney General to deposit all funds derived from an agreement to end any dispute or lawsuit in the general fund, for general revenue.

For the same reason, the Attorney General's claim in his June 28, 2019, and July 15, 2019 letters that Section 27 does not apply when the Attorney General derives settlement funds from a lawsuit filed after pre-suit negotiations—under the Attorney General's erroneous view of Section 26's reach, *see supra* pp. 21–31—is unsupported by the plain meaning of this statute. The language in Section 27 does not provide an exception for settlement agreements that result from pre-suit agreements. Indeed, the Attorney General's interpretation here would allow him to evade the plain purpose of Section 27—to provide that all settlement funds that the Attorney General recovers are for the people's, not the Attorney General's, use—by negotiating prior to filing a lawsuit, instead of after.

Finally, the Attorney General's bizarre assertion in his July 15, 2019 letter—that he can satisfy Section 27 by crediting settlement funds to the appropriation account under Wis. Stat. § 20.455(3)(g), App. 84—is an obvious, unlawful effort to retain for his office money that rightfully belongs to the people. As noted above, in Section 27, as well as in Sections 21 and 103(1), the Legislature repealed the prior regime where the Attorney General could credit settlement funds into specific accounts, include the Wis. Stat. § 20.455(3)(g) account, replacing this with a simple requirement that all Attorney General settlement funds are deposited into the general fund, for general revenue purposes. After all, "moneys paid into the treasury shall be credited to the general purpose revenues of the general fund unless otherwise specifically provided by law." Wis. Stat. § 20.906(1); *accord* Legislative Reference Bureau, Wisconsin Bill Drafting Manual 2019–2020, § 20.01(2)(b). The Attorney General's statement would also render Sections 21, 27, and 103(1) a nullity by permitting the Attorney General to continue to deposit settlement funds into the Wis. Stat.

§ 20.455(3)(g) account, contrary to basic principles of statutory construction. *See Kalal*, 2004 WI 58, ¶ 44.

## CONCLUSION

This Court should grant the Petition and reject the Attorney General's interpretation of Sections 26, 27, and 30 of Act 369.

Dated: August 1, 2019

By: *Mish* *Fogf*

Misha Tseytlin
State Bar No. 1102199
TROUTMAN SANDERS LLP
1 N. Wacker Drive, Ste. 2905
Chicago, IL 60606
Telephone: (608) 999-1240
Facsimile: (312) 759-1939
misha.tseytlin@troutman.com

Eric M. McLeod
State Bar No. 1021730
Lisa M. Lawless
State Bar No. 1021749
HUSCH BLACKWELL LLP
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53701-1379
Telephone: (608) 255-4440
Eric.McLeod@huschblackwell.com

*Counsel for Legislative Petitioners*

- 37 -

## CERTIFICATION

I hereby certify that this memorandum conforms to the rules contained in Wis. Stat. § 809.19(8)(b), (c) for a brief produced with a proportional serif font. The length of this memorandum is 6,565 words.

Dated this 1st day of August, 2019.

Misha Tseytlin
Troutman Sanders LLP