**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| COMMONWEALTH OF MASSACHUSETTS, | |
| and | No. 20 C 2658 |
| STATE OF WISCONSIN, | Judge Feinerman |
| *Plaintiffs,* | |
| v. | |
| DAIRY FARMERS OF AMERICA, INC. | |
| and | |
| DEAN FOODS COMPANY, | |
| *Defendants.* | |

**FINAL JUDGMENT**

WHEREAS, Plaintiffs, United States of America and the State of Wisconsin and the

Commonwealth of Massachusetts (collectively, the "Plaintiff States"), filed their Complaint on

May 1, 2020, the United States and Defendants, Dairy Farmers of America, Inc. and Dean Foods

Company, by their respective attorneys, have consented to entry of this Final Judgment without

trial or adjudication of any issue of fact or law and without this Final Judgment constituting any

evidence against or admission by a party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final

Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by Defendants to assure that competition is not substantially lessened;

AND WHEREAS, Defendants agree to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants represent that the divestitures and other relief required by this Final Judgment can and will be made and that Defendants will not later raise a claim of hardship or difficulty as grounds for asking the Court to modify any provision of this Final Judgment;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I.    JURISDICTION

The Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II.    DEFINITIONS

As used in this Final Judgment:

A.    "Acquirer" or "Acquirers" means the entity or entities to whom Defendants divest any of the Divestiture Assets.

B.    "DFA" means Defendant Dairy Farmers of America, Inc., a Kansas cooperative marketing association with its headquarters in Kansas City, Kansas, its successors and assigns,

and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C.    "Dean" means Defendant Dean Foods Company, a Delaware corporation with its headquarters in Dallas, Texas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

D.    "Fluid Milk" means raw milk that has been processed for human consumption as a beverage, but does not include organic milk, soy milk, extended shelf life milk, ultra-high temperature milk, or aseptic milk.

E.    "De Pere Plant" means Dean's dairy processing plant located at 3399 South Ridge Road, Ashwaubenon, Wisconsin 54115.

F.    "Franklin Plant" means Dean's dairy processing plant located at 1199 West Central Street, Franklin, Massachusetts 02038.

G.    "Franklin Purchase Option" means Dean's non-assignable option to purchase the real estate on which the Franklin Plant is located.

H.    "Harvard Plant" means Dean's dairy processing plant located at 6303, 6306, and 6313 Maxon Road, Harvard, Illinois 60033.

I.    "Exclusive Territory" means (1) the states of Illinois, Wisconsin, and Indiana; and (2) the Upper Peninsula of Michigan.

J.    "Non-Exclusive Territory" means (1) the states of Minnesota and Iowa; and (2) the Lower Peninsula of Michigan.

K.     "Transitional Dean's Brand License" means a non-exclusive, royalty-free, paid-up, irrevocable, nationwide license to use the "Dean's" brand name (and all associated trademarks, service marks, and service names) for all products for two (2) years from the date that the De Pere Divestiture Assets are divested to an Acquirer.

L.     "Dean's Brand Licenses" means:

1.     An exclusive (subject only to the rights of the Acquirer of the De Pere Divestiture Assets under the Transitional Dean's Brand License, if applicable), royalty-free, paid-up, irrevocable, perpetual license to use the "Dean's" brand name (and all associated trademarks, service marks, and service names) for all products in the Exclusive Territory; and

2.     A non-exclusive, royalty-free, paid-up, irrevocable, perpetual license to use the "Dean's" brand name (and all associated trademarks, service marks, and service names) for all products in the Non-Exclusive Territory.

M.     "Transitional Dairy Pure Brand License" means a non-exclusive, royalty-free, paid-up, irrevocable, nationwide license to use the "Dairy Pure" brand name (and all associated trademarks, service marks, and service names) for all products for two (2) years from the date that the relevant Divestiture Assets are divested to an Acquirer.

N.     "TruMoo Products" means all products sold by Dean under the TruMoo brand name at any time from January 1, 2019 to the date that the relevant Divestiture Assets are divested to an Acquirer.

O.     "Transitional TruMoo Brand License" means a non-exclusive, royalty-free, paid-up, irrevocable, nationwide license to use the "TruMoo" brand name (and all associated

4

trademarks, service marks, and service names) for TruMoo Products for two (2) years from the date that the relevant Divestiture Assets are divested to an Acquirer.

P.     "TruMoo IP" means all intellectual property, product formulas, technology, know-how, or other rights used in the manufacture or formulation of any TruMoo Products.

Q.     "TruMoo IP License" means a non-exclusive, royalty-free, paid-up, irrevocable, perpetual, nationwide license to the TruMoo IP.

R.     "Divestiture Assets" means the De Pere Divestiture Assets, the Franklin Divestiture Assets, and the Harvard Divestiture Assets.

S.     "De Pere Divestiture Assets" means:

1.     All of Defendants' rights, title, and interests in the De Pere Plant and the ancillary facilities listed in Appendix A;

2.     All tangible assets related to or used in connection with the processing, marketing, sale, or distribution of Fluid Milk and all other products by the De Pere Plant or the ancillary facilities listed in Appendix A, including, but not limited to:  research and development activities; all manufacturing and processing equipment, quality assurance equipment, research and development equipment, machine assembly equipment, tooling and fixed assets, personal property, inventory, office furniture, materials, supplies, and other tangible property; all licenses, permits, certifications, and authorizations issued by any governmental organization; all contracts, teaming arrangements, agreements, leases, commitments, certifications, and understandings, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records; and all other records;

3.     All intangible assets related to or used in connection with the processing, marketing, sale, or distribution of Fluid Milk and all other products by the De Pere Plant or the ancillary facilities listed in Appendix A, including, but not limited to:  all patents; licenses and sublicenses; intellectual property (except the TruMoo IP); copyrights; trademarks, trade names, service marks, and service names (including the "Morning Glory" and "Farm Fresh" brand names and all associated trademarks, service marks, and service names), except the "Dean's," "Jilbert," "Dairy Pure," and "TruMoo" brand names; technical information; computer software and related documentation; customer relationships, agreements, and contracts (or portions of such relationships, agreements, and contracts that relate to the De Pere Plant or the ancillary facilities listed in Appendix A); know-how; trade secrets; drawings; blueprints; designs; design protocols; specifications for materials; specifications for parts and devices; safety procedures for the handling of materials and substances; quality assurance and control procedures; design tools and simulation capability; all manuals and technical information Dean provides to its own employees, customers, suppliers, agents, or licensees; and all research data concerning historic and current research and development efforts, including but not limited to designs of experiments and the results of successful and unsuccessful designs and experiments;

4.     A Transitional TruMoo Brand License;

5.     The Transitional Dean's Brand License;

6.     A TruMoo IP License; and

7.     A Transitional Dairy Pure Brand License;

*Provided, however*, that the assets specified in Paragraphs II(S)(1)-(7) above do not include any rights, title, or interest in (i) Dean's corporate headquarters located at 2711 North Haskell

6

Avenue, Dallas, Texas 75204 or (ii) Dean's dairy processing plant located at 1126 Kilburn Avenue, Rockford, Illinois 61101.

T.      "Franklin Divestiture Assets" means:

1.      All of Defendants' rights, title, and interests in the Franklin Plant and the ancillary facilities listed in Appendix B, except the Franklin Purchase Option;

2.      All tangible assets related to or used in connection with the processing, marketing, sale, or distribution of Fluid Milk and all other products by the Franklin Plant or the ancillary facilities listed in Appendix B, including, but not limited to:  research and development activities; all manufacturing and processing equipment, quality assurance equipment, research and development equipment, machine assembly equipment, tooling and fixed assets, personal property, inventory, office furniture, materials, supplies, and other tangible property; all licenses, permits, certifications, and authorizations issued by any governmental organization; all contracts, teaming arrangements, agreements, leases, commitments, certifications, and understandings, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records; and all other records;

3.      All intangible assets related to or used in connection with the processing, marketing, sale, or distribution of Fluid Milk and all other products by the Franklin Plant or the ancillary facilities listed in Appendix B, including, but not limited to:  all patents; licenses and sublicenses; intellectual property (except the TruMoo IP); copyrights; trademarks, trade names, service marks, and service names (including the "Garelick Farms" brand name and all associated trademarks, service marks, and service names), except the "Dean's," "Dairy Pure," and "TruMoo" brand names; technical information; computer software and related documentation;

7

customer relationships, agreements, and contracts (or portions of such relationships, agreements, and contracts that relate to the Franklin Plant or the ancillary facilities listed in Appendix B); know-how; trade secrets; drawings; blueprints; designs; design protocols; specifications for materials; specifications for parts and devices; safety procedures for the handling of materials and substances; quality assurance and control procedures; design tools and simulation capability; all manuals and technical information Dean provides to its own employees, customers, suppliers, agents, or licensees; and all research data concerning historic and current research and development efforts, including but not limited to designs of experiments and the results of successful and unsuccessful designs and experiments;

4.      A Transitional TruMoo Brand License;

5.      A TruMoo IP License; and

6.      A Transitional Dairy Pure Brand License;

*Provided, however*, that the assets specified in Paragraphs II(T)(1)-(6) above do not include any rights, title, or interest in Dean's corporate headquarters located at 2711 North Haskell Avenue, Dallas, Texas 75204.

U.      "Harvard Divestiture Assets" means:

1.      All of Defendants' rights, title, and interests in the Harvard Plant and the ancillary facilities listed in Appendix C;

2.      All tangible assets related to or used in connection with the processing, marketing, sale, or distribution of Fluid Milk and all other products by the Harvard Plant or the ancillary facilities listed in Appendix C, including, but not limited to:  research and development activities; all manufacturing and processing equipment, quality assurance equipment, research

8

and development equipment, machine assembly equipment, tooling and fixed assets, personal property, inventory, office furniture, materials, supplies, and other tangible property; all licenses, permits, certifications, and authorizations issued by any governmental organization; all contracts, teaming arrangements, agreements, leases, commitments, certifications, and understandings, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records; and all other records;

       3.     All intangible assets related to or used in connection with the processing, marketing, sale, or distribution of Fluid Milk and all other products by the Harvard Plant or the ancillary facilities listed in Appendix C, including, but not limited to:  all patents; licenses and sublicenses; intellectual property (except the TruMoo IP); copyrights; trademarks, trade names, service marks, and service names, except the "Dean's," "Dairy Pure," and "TruMoo" brand names; technical information; computer software and related documentation; customer relationships, agreements, and contracts (or portions of such relationships, agreements, and contracts that relate to the Harvard plant or the ancillary facilities listed in Appendix C); know-how; trade secrets; drawings; blueprints; designs; design protocols; specifications for materials; specifications for parts and devices; safety procedures for the handling of materials and substances; quality assurance and control procedures; design tools and simulation capability; all manuals and technical information Dean provides to its own employees, customers, suppliers, agents, or licensees; and all research data concerning historic and current research and development efforts, including but not limited to designs of experiments and the results of successful and unsuccessful designs and experiments;

       4.     The Dean's Brand Licenses;

      5.     A Transitional TruMoo Brand License;

      6.     A TruMoo IP License; and

      7.     A Transitional Dairy Pure Brand License;

*Provided, however*, that the assets specified in Paragraphs II(U)(1)-(7) above do not include any rights, title, or interest in (i) Dean's corporate headquarters located at 2711 North Haskell Avenue, Dallas, Texas 75204 or (ii) Dean's dairy processing plant located at 1126 Kilburn Avenue, Rockford, Illinois 61101.

      V.     "Relevant Personnel" means all full-time, part-time, or contract personnel whose job responsibilities related in any way to the processing, marketing, sale, or distribution of Fluid Milk or any other products by the Divestiture Assets, at any time between July 1, 2019 and the date on which the Divestiture Assets are divested to Acquirer.

### III.    APPLICABILITY

      A.     This Final Judgment applies to DFA and Dean, as defined above, and all other persons, in active concert or participation with any Defendant, who receive actual notice of this Final Judgment.

      B.     If, prior to complying with Section IV and Section V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include any of the Divestiture Assets, Defendants must require the purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from Acquirer(s).

## IV.    DIVESTITURES

A.      Defendants are ordered and directed, within 30 calendar days after the Court's

entry of the Asset Preservation and Hold Separate Stipulation and Order in this matter, to divest

the Divestiture Assets in a manner consistent with this Final Judgment to an Acquirer or

Acquirers acceptable to the United States, in its sole discretion.  The United States, in its sole

discretion, may agree to one or more extensions of this time period not to exceed sixty (60)

calendar days in total and will notify the Court of any extensions.  Defendants agree to use their

best efforts to divest the Divestiture Assets as expeditiously as possible.

B.      Defendants promptly must make known, by usual and customary means, the

availability of the Divestiture Assets.  Defendants must inform any person making an inquiry

regarding a possible purchase of some or all of the Divestiture Assets that the Divestiture Assets

are being divested in accordance with this Final Judgment and must provide that person with a

copy of this Final Judgment.  Defendants must offer to furnish to all prospective Acquirers,

subject to customary confidentiality assurances, all information and documents relating to the

Divestiture Assets customarily provided in a due diligence process; provided, however, that

Defendants need not provide information or documents subject to the attorney-client privilege or

work-product doctrine.  Defendants must make this information available to Plaintiffs at the

same time that the information is made available to any other person.

C.      Defendants must cooperate with and assist each Acquirer in identifying and hiring

all Relevant Personnel associated with the particular Divestiture Assets that each Acquirer is

acquiring, including:

11

1.	Within ten (10) business days following receipt of a request by Acquirer or the United States, Defendants must identify all Relevant Personnel to Acquirer and Plaintiffs, including by providing organization charts covering all Relevant Personnel.

2.	Within ten (10) business days following receipt of a request by Acquirer or the United States, Defendants must provide to Acquirer and Plaintiffs the following additional information related to Relevant Personnel: name; job title; current salary and benefits, including most recent bonus paid, aggregate annual compensation, current target or guaranteed bonus, if any, and any other payments due to or promises made to the individual; descriptions of reporting relationships, past experience, responsibilities, and training and educational histories; lists of all certifications; and all job performance evaluations.  If Defendants are barred by any applicable laws from providing any of this information, within ten (10) business days following receipt of the request, Defendants must provide the requested information to the full extent permitted by law and also must provide a written explanation of Defendants' inability to provide the remaining information.

3.	At the request of Acquirer, Defendants must promptly make Relevant Personnel available for private interviews with Acquirer during normal business hours at a mutually agreeable location.

4.	Defendants must not interfere with any efforts by Acquirer to employ any Relevant Personnel.  Interference includes but is not limited to offering to increase the salary or improve the benefits of Relevant Personnel unless the offer is part of a company-wide increase in salary or benefits that was announced prior to November 12, 2019 or has been approved by the United States, in its sole discretion, after consultation with the Plaintiff States.  Defendants'

12

obligations under this paragraph will expire six (6) months after the divestiture of the Divestiture Assets pursuant to this Final Judgment.

5.     For Relevant Personnel who elect employment with Acquirer within six (6) months of the date on which the Divestiture Assets are divested to Acquirer, Defendants must waive all non-compete and non-disclosure agreements, vest all unvested pension and other equity rights, and provide all benefits that those Relevant Personnel otherwise would have been provided had the Relevant Personnel continued employment with Defendants, including but not limited to any retention bonuses or payments. Defendants may maintain reasonable restrictions on disclosure by Relevant Personnel of Defendants' proprietary non-public information that is unrelated to the Divestiture Assets and not otherwise required to be disclosed by this Final Judgment.

D.     Defendants must permit prospective Acquirers of some or all of the Divestiture Assets to have reasonable access to make inspections of the Divestiture Assets for which they are prospective Acquirers and access to all environmental, zoning, and other permit documents and information, and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

E.     Defendants must warrant to Acquirer(s) that each asset to be divested will be fully operational and without material defect on the date of sale.

F.     Defendants must not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

G.     Defendants must assign, subcontract, or otherwise transfer all contracts, agreements, and customer relationships (or portions of such contracts, agreements and customer

13

relationships, including but not limited to relevant portions of national contracts) related to the Divestiture Assets, including all supply and sales contracts, to Acquirer(s); *provided however*, that for any contracts or agreements (including but not limited to customer contracts and supply contracts) that require the consent of another party to assign, subcontract or otherwise transfer, Defendants must use best efforts to accomplish the assignment, subcontracting, or other transfer.

1. For any customer of the Divestiture Assets with which Dean does not have a written contract, within five (5) business days of the closing of the divestiture of each set of Divestiture Assets, Defendants must send a letter, in a form approved by the United States in its sole discretion and signed by representatives of Dean and of the relevant Acquirer, to that customer, notifying the customer that the Acquirer will be the customer's new supplier pursuant to this Final Judgment.

2. Defendants must not interfere with any negotiations between Acquirer(s) and a customer or other contracting party, and Defendants must not encourage any customer of the Divestiture Assets to terminate a contract that has been assigned or otherwise transferred to Acquirer.

3. Notwithstanding any other provision in this Paragraph IV(G), Defendants must release each Acquirer from any of Dean's obligations to purchase raw milk from DFA that would otherwise be assigned to that Acquirer as part of the divestiture required by this Final Judgment.

H. For any governmental license, permit, registration, authorization, approval, or the discontinuation of any obligation thereunder that cannot be transferred to the relevant Acquirer (collectively, the "Non-Transferred Licenses"), Defendants must use best efforts to assist

14

Acquirer(s) in applying for and securing all necessary government approvals for the issuance of the Non-Transferred License(s) to Acquirer(s).

       I.       At the option of each Acquirer, and subject to approval by the United States in its sole discretion, on or before the date on which some or all of the Divestiture Assets are divested to that Acquirer, DFA must enter into a supply contract or contracts for raw milk sufficient to meet that Acquirer's needs, as determined by that Acquirer, for a period of up to three (3) months, on terms and conditions reasonably related to market conditions for the supply of raw milk.  The United States, in its sole discretion, may approve one or more extensions of any supply contract, for a total of up to an additional three (3) months.  If Acquirer seeks an extension of the term of a supply contract, Defendants must notify the United States in writing at least one (1) month prior to the date the supply contract expires.  Acquirer may terminate a supply contract without cost or penalty at any time upon commercially reasonable notice.

       J.       At the option of each Acquirer, and subject to approval by the United States in its sole discretion, on or before the date on which some or all of the Divestiture Assets are divested to that Acquirer, Defendants must enter into a contract or contracts, on terms and conditions reasonably related to market conditions, to provide transition services (including but not limited to back office, human resource, accounting, employee health and safety, and information technology services and support) for a period of up to six (6) months to facilitate the transfer of the relevant Divestiture Assets to that Acquirer or to allow that Acquirer to operate the relevant Divestiture Assets.  The United States, in its sole discretion, after consultation with the Plaintiff States, may approve one or more extensions of a contract for transition services, for a total of up to an additional six (6) months.  If Acquirer seeks an extension of the term of a contract for

transition services, Defendants must notify the United States in writing at least one (1) month prior to the date the contract expires. Acquirer may terminate a contract for transition services without cost or penalty at any time upon commercially reasonable notice. The employee(s), contractors, or other personnel of Defendants tasked with providing these transition services must not share any competitively sensitive information of Acquirer with any other employee of Defendants.

K.      Defendants must warrant to Acquirer(s) that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of the Divestiture Assets. Following the sale of any of the Divestiture Assets, Defendants must not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

L.      For a period of one (1) year following the divestiture of each set of Divestiture Assets to the relevant Acquirer, Defendants must not initiate customer-specific communications to solicit any customer for the portion of that customer's business covered by the contract, agreement or relationship (or portion thereof) that is included in the Divestiture Assets; *provided, however*, that:

1.      Defendants may respond to inquiries initiated by customers and enter into negotiations at the request of customers (including responding to requests for quotation or proposal) to supply any business, whether or not such business was included in the Divestiture Assets; and

2. Defendants must maintain a log of telephonic, electronic, in-person, and other communications that constitute inquiries or requests from customers within the meaning of Paragraph IV(L)(1) above and make it available to the United States for inspection upon request.

M. DFA will not exercise the Franklin Purchase Option except that, upon Acquirer's request, DFA will (1) exercise the Franklin Purchase Option and (2) sell to Acquirer all of DFA's resulting rights, title, and interest in the property covered by the Franklin Purchase Option at the same price that DFA pays for that property under the Franklin Purchase Option.

N. Unless the United States otherwise consents in writing, the divestitures pursuant to Section IV or by a Divestiture Trustee appointed pursuant to Section V of this Final Judgment must include (1) the entirety of the De Pere Divestiture Assets and the entirety of the Harvard Divestiture Assets to a single Acquirer and (2) the entirety of the Franklin Divestiture Assets to a single Acquirer, and must be accomplished in such a way as to satisfy the United States, in its sole discretion, after consultation with the Plaintiff States, that the Divestiture Assets can and will be used by the relevant Acquirer as part of a viable, ongoing business of processing and selling Fluid Milk and will remedy the competitive harm alleged in the Complaint. Divestiture of the Divestiture Assets may be made to one or more Acquirers, provided that in each instance it is demonstrated to the sole satisfaction of the United States, after consultation with the Plaintiff States, that the Divestiture Assets will remain viable and that the divestiture will remedy the competitive harm alleged in the Complaint. The divestiture(s), whether pursuant to Section IV or Section V of this Final Judgment,

(1) must be made to Acquirer(s) that, in the United States' sole judgment, after consultation with the Plaintiff States, has the intent and capability (including the necessary managerial, operational, technical, and financial

17

capability) of competing effectively in the business of processing and selling Fluid Milk; and

(2)     must be accomplished so as to satisfy the United States, in its sole discretion, after consultation with the Plaintiff States, that none of the terms of any agreement between Acquirer(s) and Defendants give Defendants the ability unreasonably to raise the costs of Acquirer(s), to lower the efficiency of Acquirer(s), or otherwise to interfere in the ability of Acquirer(s) to compete effectively.

O.     If any of the terms of an agreement between Defendants and Acquirer(s) to effectuate the divestiture required by this Final Judgment varies from a term of this Final Judgment then, to the extent that Defendants cannot fully comply with both, this Final Judgment determines Defendants' obligations.

## V.     APPOINTMENT OF DIVESTITURE TRUSTEE

A.     If Defendants have not divested the Divestiture Assets within the period specified in Paragraph IV(A), or if Defendants waive their right to first attempt such divestiture of (1) the De Pere Divestiture Assets and the Harvard Divestiture Assets or (2) the Franklin Divestiture Assets, Defendants must immediately notify Plaintiffs of that fact in writing. Upon application of the United States, the Court will appoint a Divestiture Trustee selected by the United States and approved by the Court to effect the divestiture(s) of any of the Divestiture Assets that have not been sold during the period specified in Paragraph IV(A).

B.     After the appointment of a Divestiture Trustee by the Court, only the Divestiture Trustee will have the right to sell the Divestiture Assets that the Divestiture Trustee has been appointed to sell. The Divestiture Trustee will have the power and authority to accomplish the divestiture(s) to Acquirer(s) acceptable to the United States, in its sole discretion, at a price and on terms that are then obtainable upon reasonable effort by the Divestiture Trustee, subject to the

provisions of Sections IV, V, and VI of this Final Judgment, and will have other powers as the

Court deems appropriate.  Subject to Paragraph V(D) of this Final Judgment, the Divestiture

Trustee may hire at the cost and expense of Defendants any agents or consultants, including, but

not limited to, investment bankers, attorneys, and accountants, who will be solely accountable to

the Divestiture Trustee, reasonably necessary in the Divestiture Trustee's judgment to assist in

the divestiture(s).  Any such agents or consultants will serve on such terms and conditions as the

United States approves, including confidentiality requirements and conflict of interest

certifications.

        C.      Defendants may not object to a sale by the Divestiture Trustee on any ground

other than malfeasance by the Divestiture Trustee.  Objections by Defendants must be conveyed

in writing to Plaintiffs and the Divestiture Trustee within ten (10) calendar days after the

Divestiture Trustee has provided the notice required under Section VI.

        D.      The Divestiture Trustee will serve at the cost and expense of Defendants pursuant

to a written agreement, on such terms and conditions as the United States approves, including

confidentiality requirements and conflict of interest certifications.  The Divestiture Trustee will

account for all monies derived from the sale of the assets sold by the Divestiture Trustee and all

costs and expenses so incurred.  After approval by the Court of the Divestiture Trustee's

accounting, including fees for any of its services yet unpaid and those of agents and consultants

retained by the Divestiture Trustee, all remaining money will be paid to Defendants and the trust

will then be terminated.  The compensation of the Divestiture Trustee and any agents or

consultants retained by the Divestiture Trustee must be reasonable in light of the value of the

Divestiture Assets and based on a fee arrangement that provides the Divestiture Trustee with

19

incentives based on the price and terms of the divestiture(s) and the speed with which it is accomplished, but the timeliness of the divestiture(s) is paramount. If the Divestiture Trustee and Defendants are unable to reach agreement on the Divestiture Trustee's or any agents' or consultants' compensation or other terms and conditions of engagement within fourteen (14) calendar days of the appointment of the Divestiture Trustee, the United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court. Within three (3) business days of hiring any agent or consultant, the Divestiture Trustee must provide written notice of the hiring and rate of compensation to Defendants and the United States.

E.      Defendants must use their best efforts to assist the Divestiture Trustee in accomplishing the required divestiture(s). The Divestiture Trustee and any agents or consultants retained by the Divestiture Trustee must have full and complete access to the personnel, books, records, and facilities of the Divestiture Assets the Divestiture Trustee is responsible for selling, and Defendants must provide or develop financial and other information relevant to the Divestiture Assets as the Divestiture Trustee may reasonably request, subject to reasonable protection for trade secrets; other confidential research, development, or commercial information; or any applicable privileges. Defendants may not take any action to interfere with or to impede the Divestiture Trustee's accomplishment of the divestiture(s).

F.      After appointment, the Divestiture Trustee will file monthly reports with Plaintiffs, setting forth the Divestiture Trustee's efforts to accomplish the divestiture(s) ordered by this Final Judgment. Reports must include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about

20

acquiring, any interest in any of the Divestiture Assets and will describe in detail each contact with any such person.  The Divestiture Trustee will maintain full records of all efforts made to divest the Divestiture Assets.

G.      If the Divestiture Trustee has not accomplished the divestiture(s) ordered by this Final Judgment within sixty (60) days of appointment, the Divestiture Trustee must promptly file with the Court a report setting forth (1) the Divestiture Trustee's efforts to accomplish the required divestiture; (2) the reasons, in the Divestiture Trustee's judgment, why the required divestiture has not been accomplished; and (3) the Divestiture Trustee's recommendations.  To the extent such report contains information that the Divestiture Trustee deems confidential, such report will not be filed in the public docket of the Court.  The Divestiture Trustee will at the same time furnish such report to Plaintiffs.  Within five (5) days of receiving the Divestiture Trustee's report, the United States, in its sole discretion, may extend the period of the trust for no more than sixty (60) additional days by written notice to the Divestiture Trustee and the Court. If, at the expiration of the initial time period and any extension thereof, the Divestiture Trustee has not secured a definitive agreement for the sale of the Divestiture Assets consistent with this Final Judgment and acceptable to the United States, in its sole discretion, DFA may file a motion with the Court, which the United States will not unreasonably oppose, requesting that, solely with respect to any Divestiture Assets for which the Divestiture Trustee was unable to secure a definitive divestiture agreement, (i) the Asset Preservation and Hold Separate Stipulation and Order be terminated and (ii) this Final Judgment be modified to permit DFA to retain those assets.

H.      If the United States determines that the Divestiture Trustee is not acting diligently or in a reasonably cost-effective manner, the United States may recommend that the Court appoint a substitute Divestiture Trustee.

## VI.      NOTICE OF PROPOSED DIVESTITURE

A.      Within two (2) business days following execution of a definitive divestiture agreement, Defendants or the Divestiture Trustee, whichever is then responsible for effecting any divestiture required herein, must notify Plaintiffs of a proposed divestiture required by this Final Judgment.  If the Divestiture Trustee is responsible for effecting the divestiture, the Divestiture Trustee also must notify Defendants.  The notice must set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.      Within fifteen (15) calendar days of receipt by the United States of this notice, the United States may request from Defendants, the proposed Acquirer(s), other third parties, or the Divestiture Trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer(s), and other prospective Acquirer(s).  Defendants and the Divestiture Trustee must furnish the additional information requested to Plaintiffs within fifteen (15) calendar days of the receipt of the request, unless the United States provides written agreement to a different period.

C.      Within forty-five (45) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from Defendants, the proposed Acquirer(s), other third parties, and the Divestiture Trustee,

whichever is later, the United States will provide written notice to Defendants and the Divestiture Trustee, if there is one, stating whether or not the United States, in its sole discretion, after consultation with the Plaintiff States, objects to the proposed Acquirer(s) or any other aspect of the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Defendants' limited right to object to the sale under Paragraph V(C) of this Final Judgment. Absent written notice that the United States does not object or upon objection by the United States, a divestiture may not be consummated. Upon objection by Defendants pursuant to Paragraph V(C), a divestiture by the Divestiture Trustee may not be consummated unless approved by the Court.

D.      No information or documents obtained pursuant to Section VI may be divulged by Plaintiffs to any person other than an authorized representative of the executive branch of the United States or the Plaintiff States, except in the course of legal proceedings to which the United States is a party (including grand-jury proceedings), for the purpose of evaluating a proposed Acquirer or securing compliance with this Final Judgment, or as otherwise required by law.

E.      In the event of a request by a third party for disclosure of information under the Freedom of Information Act, 5 U.S.C. § 552, the Antitrust Division will act in accordance with that statute, and the Department of Justice regulations at 28 C.F.R. part 16, including the provision on confidential commercial information, at 28 C.F.R. § 16.7. Persons submitting information to the Antitrust Division should designate the confidential commercial information portions of all applicable documents and information under 28 C.F.R. § 16.7. Designations of

confidentiality expire ten years after submission, "unless the submitter requests and provides justification for a longer designation period." *See* 28 C.F.R. § 16.7(b).

F.      If at the time a person furnishes information or documents to the United States pursuant to Section VI, that person represents and identifies in writing information or documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," the United States must give that person ten calendar days' notice before divulging the material in any legal proceeding (other than a grand-jury proceeding).

## VII.     FINANCING

Defendants may not finance all or any part of Acquirers' purchase of all or part of the Divestiture Assets made pursuant to this Final Judgment.

## VIII.    ASSET PRESERVATION AND HOLD SEPARATE

Until the divestiture(s) required by this Final Judgment have been accomplished, Defendants must take all steps necessary to comply with the Asset Preservation and Hold Separate Stipulation and Order entered by the Court.  Defendants will take no action that would jeopardize the divestiture(s) ordered by the Court.

## IX.      AFFIDAVITS

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestiture required by this Final Judgment has been completed, Defendants must deliver to Plaintiffs an affidavit, signed by each Defendant's Chief Financial Officer, Dean's General Counsel, and DFA's Chief Legal Officer, describing the

24

fact and manner of Defendants' compliance with this Final Judgment. Each affidavit must include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, an interest in some or all of the Divestiture Assets, and must describe in detail each contact with such persons during that period. Each affidavit also must include a description of the efforts Defendants have taken to solicit buyers for and complete the sale of the Divestiture Assets, and to provide required information to prospective Acquirers. Each affidavit also must include a description of any limitations placed by Defendants on information provided to prospective Acquirers. If the information set forth in the affidavit is true and complete, objection by the United States to information provided by Defendants to prospective Acquirers must be made within fourteen (14) calendar days of receipt of the affidavit.

B.      Within twenty (20) calendar days of the filing of the Complaint in this matter, Defendants must deliver to Plaintiffs an affidavit that describes in reasonable detail all actions Defendants have taken and all steps Defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment. Defendants must deliver to the United States an affidavit describing any changes to the efforts and actions outlined in Defendants' earlier affidavits filed pursuant to Section IX within fifteen (15) calendar days after the change is implemented.

C.      Defendants must keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after the divestiture has been completed.

## X.    COMPLIANCE INSPECTION

A.    For the purposes of determining or securing compliance with this Final Judgment, or of related orders such as an Asset Preservation and Hold Separate Stipulation and Order, or of determining whether this Final Judgment should be modified or vacated, and subject to any legally-recognized privilege, from time to time authorized representatives of the United States, including agents retained by the United States, must, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and reasonable notice to Defendants, be permitted:

    (1)    access during Defendants' office hours to inspect and copy or, at the option of the United States, to require Defendants to provide electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants relating to any matters contained in this Final Judgment; and

    (2)    to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters.  The interviews must be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.    Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants must submit written reports or respond to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment.

C.    No information or documents obtained pursuant to Section X may be divulged by the United States to any person other than an authorized representative of the executive branch of the United States or the Plaintiff States, except in the course of legal proceedings to which the

United States is a party (including grand jury proceedings), for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      In the event of a request by a third party for disclosure of information under the Freedom of Information Act, 5 U.S.C. § 552, the Antitrust Division will act in accordance with that statute, and the Department of Justice regulations at 28 C.F.R. part 16, including the provision on confidential commercial information, at 28 C.F.R. § 16.7. Defendants submitting information to the Antitrust Division should designate the confidential commercial information portions of all applicable documents and information under 28 C.F.R. § 16.7. Designations of confidentiality expire ten years after submission, "unless the submitter requests and provides justification for a longer designation period." *See* 28 C.F.R. § 16.7(b).

E.      If at the time that Defendants furnish information or documents to the United States pursuant to Section X, Defendants represent and identify in writing information or documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," the United States must give Defendants ten (10) calendar days' notice before divulging the material in any legal proceeding (other than a grand jury proceeding).

## XI.    NOTIFICATION

A.      Unless a transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a (the "HSR Act"), Defendants may not, during the term of this Final Judgment, directly or indirectly acquire any assets of or any interest, including any financial, security, loan,

equity, or management interest, in an entity involved in Fluid Milk processing in the United

States without providing advance notification to the United States and to any Plaintiff State in

which any of the assets or interests are located or whose border is less than 150 miles from

any such assets or interests; provided that notification will not be required pursuant to this

Section where the assets or interest being acquired generated less than $1 million in revenue

from the processing, marketing, sale, and distribution of Fluid Milk in the most recent completed

calendar year.

      B.      Defendants must provide the notification required by Section XI in the same

format as, and in accordance with the instructions relating to, the Notification and Report Form

set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations as amended,

except that the information requested in Items 5 through 8 of the instructions must be provided

only about Fluid Milk processing.  Notification must be provided at least thirty (30) calendar

days before acquiring any such interest, and must include, beyond the information required by

the instructions, the names of the principal representatives who negotiated the agreement on

behalf of each party, and all management or strategic plans discussing the proposed transaction.

If, within the 30-day period following notification, representatives of the United States make a

written request for additional information, Defendants may not consummate the proposed

transaction or agreement until thirty (30) calendar days after submitting all requested

information.  Early termination of the waiting periods in this Paragraph may be requested and,

where appropriate, granted in the same manner as is applicable under the requirements and

provisions of the HSR Act and rules promulgated thereunder.  Section XI will be broadly

construed and any ambiguity or uncertainty regarding the filing of notice under Section XI will be resolved in favor of filing notice.

## XII.    NO REACQUISITION, LIMITATIONS ON COLLABORATIONS

Defendants may not reacquire any part of or any interest in the Divestiture Assets during the term of this Final Judgment without the prior written consent of the United States in its sole discretion, after consultation with the Plaintiff States.  In addition, Defendants and Acquirer(s) may not, without the prior written consent of the United States, enter into a new collaboration or expand the scope of an existing collaboration involving any of the Divestiture Assets during the term of this Final Judgment.  The decision whether to consent to a collaboration is within the sole discretion of the United States.

## XIII.    RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Final Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIV.    ENFORCEMENT OF FINAL JUDGMENT

A.    The United States retains and reserves all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court.  Defendants agree that in a civil contempt action, a motion to show cause, or a similar action brought by the United States regarding an alleged violation of this Final Judgment, the United States may establish a violation of this Final Judgment and the appropriateness of a remedy therefor by a preponderance of the evidence, and Defendants waive any argument that a different standard of proof should apply.

29

B.      This Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore the competition the United States alleged was harmed by the challenged conduct.  Defendants agree that they may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face.  In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

C.      In an enforcement proceeding in which the Court finds that Defendants have violated this Final Judgment, the United States may apply to the Court for a one-time extension of this Final Judgment, together with other relief that may be appropriate.  In connection with a successful effort by the United States to enforce this Final Judgment against a Defendant, whether litigated or resolved before litigation, that Defendant agrees to reimburse the United States for the fees and expenses of its attorneys, as well as all other costs, including experts' fees, incurred in connection with that enforcement effort, including in the investigation of the potential violation.

D.      For a period of four (4) years following the expiration of this Final Judgment, if the United States has evidence that a Defendant violated this Final Judgment before it expired, the United States may file an action against that Defendant in this Court requesting that the Court order:  (1) Defendant to comply with the terms of this Final Judgment for an additional term of at least four years following the filing of the enforcement action; (2) all appropriate contempt

remedies; (3) additional relief needed to ensure the Defendant complies with the terms of this Final Judgment; and (4) fees or expenses as called for by this Section XIV.

## XV.    EXPIRATION OF FINAL JUDGMENT

Unless the Court grants an extension, this Final Judgment will expire ten (10) years from the date of its entry, except that after five (5) years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and Defendants that the divestitures have been completed and the continuation of this Final Judgment no longer is necessary or in the public interest.

## XVI.    PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including by making available to the public copies of this Final Judgment, the Competitive Impact Statement, comments thereon, and the United States' responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and responses to comments filed with the Court, entry of this Final Judgment is in the public interest.


Date: 10/6/2020

[Court approval subject to procedures of Antitrust Procedures and Penalties Act, 15 U.S.C. § 16]

_____

United States District Judge

31

## **Appendix A – DePere Ancillary Facilities**

1. 1118 N. 17th Street, Sheboygan, Wisconsin 54115 (Garage/Parking)

2. 1233 Contract Drive, Ashwaubenon, Wisconsin 54304 (Warehouse)

## **Appendix B – Franklin Ancillary Facilities**

1. 10 DiNunzio Road, Watertown, Connecticut 06795 (Cross-Dock/Warehouse)

2. 1376 West Central Street, Franklin, Massachusetts 02038 (Warehouse/Sales Office)

3. 1701 Hammond Street, Hermon, Maine 04401 (Distribution Depot)

4. 131 Rand Road, Portland, Maine 04102 (Parking)

5. 10 Creek Brook Drive, Haverhill, Massachusetts 01832 (Warehouse)

## Appendix C – Harvard Ancillary Facilities

1. 3600 River Road, Franklin Park, Illinois 60131 (Depot)

2. 23914 and 23916 Center Street, Harvard, Illinois 60033 (Parking/Part of Plant)

3. 24114 Route 173, Harvard, Illinois 60033 (Part of Plant)

4. 965 S. Wyckles Road, Decatur, Illinois 62521 (Depot/Office)

5. 450 Comanche Circle, Harvard, Illinois 60033 (Warehouse)

6. Dry Storage, 6303 Maxon Road, Harvard, Illinois 60033

7. Sludge Site, 6303 Maxon Road, Harvard, Illinois 60033

8. Alco (Alders) Storage Area, 6303 Maxon Road, Harvard, Illinois 60033

9. Railroad Encroachment Area, 6303 Maxon Road, Harvard, Illinois 60033